IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOROTHY ANNA FINK,** | : | CIVIL ACTION |
| **Plaintiff** | : | |
| | : | |
| v. | : | NO. 08-1330 |
| | : | |
| **MICHAEL J. ASTRUE,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant** | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                          **March 30, 2009**

Dorothy Anna Fink seeks judicial review, pursuant to 42 U.S.C. §§ 405(g), 1383(c) of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act").

Ms. Fink has filed a request for review and the Commissioner has responded to it. For the reasons set forth below, the Commissioner's decision is affirmed. As to the claims that the ALJ improperly determined plaintiff does not meet listing 11.03, that the ALJ improperly rejected Dr. Azizi's opinion, and that the ALJ improperly assessed plaintiff's testimony, the plaintiff's objections will be overruled and the Magistrate Judge's Report and Recommendation will be adopted.[1] As to the plaintiff's claim that the

---

[1] The essential portions of Magistrate Judge Wells' Report and Recommendation addressing the first three claims are set forth herein. Some minor changes have been made, primarily involving style and case citations.

1

ALJ improperly found plaintiff could perform her past relevant work, the defendant's objection will be sustained.

**I. PROCEDURAL HISTORY**[2]

On October 24, 2005, Mrs. Fink protectively applied for DIB and SSI benefits alleging disability, since July 6, 2005, as a result of epileptic seizures. (R. 14). After benefits were denied initially, (R. 214-17), she requested and was granted an administrative hearing. (R. 35, 26).

On February 26, 2007, Mrs. Fink, unrepresented, appeared before Javier Arrastia, Administrative Law Judge ("ALJ"), for an administrative hearing; the hearing was continued to allow her the opportunity to obtain counsel. (R.232-35). On May 11, 2007, at a second administrative hearing before ALJ Arrastia, Mrs. Fink, represented by counsel, John Fink, her husband, Sharon Fink, her mother-in-law, and Nancy Harter, a vocational expert, testified. (R. 236-259). The ALJ, using the sequential evaluation process for disability,[3] issued an unfavorable decision on June 19, 2007. (R. 14-20). On January 16,

---

[2] I have reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review, Defendant's Response to Request for Review of Plaintiff, Plaintiff's Reply Brief to Defendant's Response to Request for Review of Plaintiff and the adm inistrative record ("R."), including all exhibits thereto.

[3] The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1. If claimant is working, doing substantial activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 CFR §§ 404.1520(b), 416.920(b);
> 2. If claimant is found not to have a severe impairment which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 CFR §§ 404.1520(c),

2008, the Appeals Council denied Mrs. Fink's request for review, rendering the ALJ's decision the final decision of the Commissioner. (R. 4-6). On October 14, 2008, I referred this case to the Honorable Carol Sandra Moore Wells, magistrate judge, for preparation of a report and recommendation, under the authority of 28 U.S.C. § 636(b)(1)(B). On March 17, 2009, the report and recommendation was filed.

## II. FACTUAL BACKGROUND

### A. Personal History

Mrs. Fink, born on September 1, 1982, was 24 years old at the time of the administrative hearing. (R. 205, 242). She has a high school education and past relevant work as a cashier. (R. 81, 88-89, 95-96, 245-46). She lives with her husband, John Fink, on the third floor of a home owned by Mr. Fink's grandmother. (R. 101).

---

416.920(c);
3. If claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 CFR, a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 CFR §§ 404.1520(d), 416.920(d);
4. If claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 CFR §§ 404.1520(f), 416.920(f); and
5. The Commissioner will determine whether, given claimant's residual functional capacity, age, education and past work experience in conjunction w ith criteria listed in Appendix 2, he is or is not disabled. *See* 20 CFR §§ 404.1520(g), 416.920(g).

**B. Mrs. Fink's Testimony**

At the administrative hearing, Mrs. Fink testified that a seizure and severe fall on July 2, 2005 rendered her unable to work. (R. 240, 249). She has no medical coverage and subsists on her husband's military disability income. (R. 243).

Mrs. Fink was diagnosed with a seizure disorder in 1996 (R. 248); medication controlled her seizures until 2005. (R. 249). She testified that she cannot work because daily seizures cause her to lose track of time and to suffer memory loss. (R. 247-48). She takes Depakote[4] (500 milligrams extended release dosage) three times daily and Tegretol[5] (250 milligrams) twice a day to treat her seizure disorder. (R. 250). These seizure medications induce drowsiness; Mrs. Fink sleeps up to eighteen hours a day. (R. 105).

Imbalance requires Mrs. Fink to have assistance bathing and climbing stairs. (R. 101-04). She does not ride public transportation alone, so her husband drives her around. (R. 102, 243). She cannot cook on a stove, climb a ladder, or remain in environments with strobe lights. (R. 102-03).

---

[4]Depakote "is used alone or with other medications to treat certain types of seizures. [It is] also used to treat mania in people with bipolar disorder. It is also used to prevent migraine headaches, but not to relieve headaches that have already begun. [Depakote] is in a class of medications called anticonvulsants. It works by increasing the amount of a certain natural substance in the brain." *See MedlinePlus* available at http://www.nlm.nih.gov/medlineplus/druginfo/meds /a682412.html#why.

[5]Tegretol is "used alone or in combination with other medications to treat certain types of seizures in patients with epilepsy. It is also used to treat trigeminal neuralgia. [Tegretol] extended-release capsules are used to treat episodes of mania or mixed episodes in patients with bipolar I disorder. [Tegretol] is in a class of medications called anticonvulsants. It works by reducing abnormal excitement in the brain.

**C. John Fink's Testimony**

John Fink has been married to Mrs. Fink for two years. He testified at the administrative hearing that he has observed Mrs. Fink during petit mal seizures. He reported that the seizures cause her to stop talking during conversations and stare ahead for ten to fifteen minutes. (R. 253). He stated that, after Mrs. Fink has a petit mal seizure, she has no memory of seizing. *Id*. He observed that during grand mal seizures Mrs. Fink makes a high-pitched scream, then convulses for three to ten minutes; her lips turn blue, she bites her tongue, and loses control of her bladder. (R. 253-54). Mr. Fink testified that she often emerges from a grand mal seizure disoriented, unable to recognize people, and appears to be in a fog for the next two to three days. (R. 254). From September 2006 through May 2007, Mr. Fink recorded Mrs. Fink's seizure activity onto a monthly calendar. (R. 254). He drew circles to indicate days she had petit mal seizures; he inscribed "grand mal" on the days she had grand mal seizures. (R. 255). Mr. Fink stated she often experienced more than one petit mal seizure on the days he circled. (R. 256).

**D. State Agency Assessments**

Robert Snyder, a lay examiner, evaluated Mrs. Fink on behalf of the state agency, without the benefit of her treating physicians' statements on February 14, 2006. (R. 192-203). He diagnosed Mrs. Fink with a seizure disorder and opined that her generalized seizure frequency failed to meet a medical listing. (R. 192, 203). No exertional, postural, manipulative, visual, or communicative limitations were found. (R. 193-95). He

concluded that Mrs. Fink should avoid exposure to vibrations and hazards, including machinery and heights. (R. 195).

**E. Vocational Testimony**

The vocational expert ("VE") classified Mrs. Fink's past relevant cashier work at CompUSA as semi-skilled[6] medium[7] work. (R. 257). The ALJ asked the VE to consider whether a person who had to undergo seizure precautions, including not being exposed to heights, could perform Mrs. Fink's past relevant work. Id. The VE stated that cashier work could be performed as generally described in the DOT, notwithstanding seizure precautions. (R. 258).

**II. THE ALJ'S FINDINGS**

After the administrative hearing, the ALJ issued the following relevant findings:

> 3. [Plaintiff] has the following severe impairment: a seizure disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[6]Semi-skilled work requires "some skills but does not require doing the more complex work duties." 20 C.F.R. §§ 404.1568(b); 416.968(b).

[7]"Medium work involves lifting no more that 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § § 404.1567(c); 416.967(c).

     5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform work at all exertional levels so long as she exercises the usual seizure precautions, such as avoidance of dangerous moving machinery, unprotected heights, and other hazardous conditions.

     6. [Plaintiff] is capable of performing past relevant work as a cashier. This work does not require the performance of workrelated activities precluded by [Plaintiff's] residual functional capacity. (20 CFR 404.1565 and 416.965).

     7. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from July 6, 2005 through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).
(R. 14-20).

## IV. DISCUSSION

### A. Standard of Judicial Review

The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence. Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). It is more than a mere scintilla of evidence but may be less than a preponderance. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact, if they are supported by substantial evidence even when the court, acting *de novo,* might have reached a different conclusion.

Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986), cert. denied, 482 U.S. 905 (1987).  The Commissioner's legal conclusions are subject to plenary review. Schaudeck, 181 F.3d at 431.

**B. Burden of Proof in Disability Proceedings**

In order to be found "disabled" under the Act, Mrs. Fink must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Mrs. Fink may establish a disability through: (a) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, App. 1; or (b) proof that the impairment is severe enough that she cannot engage in any type of "substantial gainful work which exists in the national economy." Heckler v. Campbell, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423 (d)(2)(A).

Under the first method, Mrs. Fink is considered *per se* disabled by meeting one of the "listed" impairments. Under the second method, Mrs. Fink must initially demonstrate that a medically determinable disability prevents her from returning to past employment. See Brown v. Bowen, 845 F.2d at 1214. If she proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy

which she is capable of performing given her age, education, and work experience. See Mason v. Shalala, 994 F.2d 1058, 1063-64 (3d Cir. 1993).

**C. Review of the Administrative Law Judge's Decision**

The ALJ determined that Mrs. Fink was not disabled at any time through the date of his decision and, therefore, denied her disability benefits. (R. 22). Mrs. Fink asserts that the ALJ improperly: (1) determined that she did not meet Listing 11.03, (2) rejected her treating physician's opinion and (3) found she could complete her past relevant work, and (4) assessed her credibility. *Plaintiff's Brief and Statement of Issues in Support of Request for Review* ("Pl.'s Br") at 4-23. The Commissioner requests that the court affirm his properly supported final ruling. *Defendant's Response to Request for Review* ("Def.'s Br.") at 1-10.[8]

**1. The ALJ Properly Determined Mrs. Fink Does Not Meet Listing 11.03**

Mrs. Fink complains that the ALJ should have found that her seizure disorder met or equaled Listing 11.03.[9] Pl.'s Br. at 4-7. The Commissioner counters that the ALJ's listing finding is correct. Def.'s Br. at 2-3. The ALJ justified not finding a listing or

---

[8]To facilitate continuity, the court will address Mrs. Fink's credibility argument before reviewing her prior to her past relevant work argument.

[9]Listing 11.03 provides: Epilepsy: nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern including all associated phenomena, occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day. 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.03 (2008).

9

equivalence to 11.03 because the record contains inconsistent statements, as well as lack of proof, regarding the type of seizures Mrs. Fink suffers from and their frequency. (R. 17).

Furthermore, the ALJ found Mrs. Fink's seizures to be controlled with medication and specifically noted:

> . . . if her epilepsy is as uncontrolled as she avers, in order to establish that she is entitled to benefits based on meeting or equaling a listing, she has an obligation to document regular follow-up care with a neurologist, compliance with medications via regular blood serum levels, any pertinent new tests, and any hospitalizations or emergency room visits since July 2005 (aside from Exhibit 6F). Instead, we have the extant scant record and conflicting accounts of her seizures. Based on this record, I am unable to find a seizure disorder that meets or equals the listings. (R. 18).

The ALJ's listing comments are supported by the record. Dr. Samuel Tucker's records confirm that Mrs. Fink's seizures were controlled with Depakote from 1996 through 1999. (R. 143-44, 46). On October 26, 2001, Dr. Robert Clancy diagnosed juvenile myoclonic epilepsy,[10] changed Mrs. Fink's medication from Depakote to Topamax[11] (600 mg daily), (R. 139-40), and considered her an appropriate candidate for

---

[10] Myoclonic epilepsy is "a sudden, involuntary jerking of a muscle or group of muscles. In its simplest form, myoclonus consists of a muscle twitch followed by relaxation. A hiccup is an example of this type of myoclonus. Other familiar examples of myoclonus are the jerks or "sleep starts" that some people experience while drifting off to sleep. These simple forms of myoclonus occur in normal, healthy persons and cause no difficulties. When more widespread, myoclonus may involve persistent, shock-like contractions in a group of muscles. Myoclonic jerking may develop in people with multiple sclerosis, Parkinson's disease, Alzheimer's disease, or Creutzfeldt-Jakob disease. Myoclonic jerks commonly occur in persons with epilepsy, a disorder in which the electrical activity in the brain becomes disordered and leads to seizures. *See National Institute of Neurological Disorders and Stroke* available at http://www.ninds. nih.gov/disorders/myoclonus/myoclonus.htm.

[11] Topamax "is used alone or with other medications to treat certain types of seizures in people who have epilepsy. [It] is also used with other medications to control seizures in people who have Lennox-Gastaut syndrome. [Topamax] is used to treat patients who continue to have seizures even when

driving "since she has not had any convulsive seizures or attacks that would impair her ability to drive a motor vehicle since 1996." (R. 139). On September 23, 2005, Dr. S. Ausim Azizi, Mrs. Fink's treating neurologist, found her unable to work due to her epilepsy. (R. 190). However, as of February 9, 2006, Dr. L. Patterson found that she did not meet a listing and suffered only minimal restrictions from generalized grand mal and myoclonic jerks with no loss of consciousness upon awakening every morning. (R. 134). Dr. Azizi, on January 10, 2007, noted "intractable epilepsy" and gave a poor prognosis because of ongoing breakthrough seizures despite medication. (R. 230). Almost six months later, on June 7, 2007, Dr. Azizi quantified Mrs. Fink's petit mal and grand mal seizures as once every two to three months and dated her last seizures as March 23, 2006 and November 2006. (R. 225). Thus, her treatment notes do not indicate seizures more frequently than once weekly, as required to meet listing 11.03. Although the Finks testified to a high frequency of seizures, her own medical records do not substantiate that frequency. Dr. Azizi, her neurologist, confirmed that her seizures occurred once every two to three months, (R. 225), not five to six times per month as indicated in her husband's seizure log. (R. 124-29, 254-56). Accordingly, the ALJ properly found that the Finks' testimony lacked credibility. The record supports the ALJ's decision. Objective medical evidence is lacking, and inconsistent statements that demonstrate that Mrs. Fink

---

they take other anti-seizure medications. [It] is also used to prevent migraine headaches, but not to relieve the pain of migraine headaches when they occur. [Topamax] is in a class of medications called anticonvulsants. It works by decreasing abnormal excitement in the brain." *See MedlinePlus* available at http://www.nlm.nih.gov/medlineplus/druginfo /meds/a697012.html.

has not met Listing 11.03.

**2. The ALJ Properly Rejected Dr. Azizi's Opinion**

In March 2006, Dr. Azizi found Mrs. Fink to be permanently disabled as a result of her seizure disorder. (R. 204).[12] On January 10, 2007, he gave Mrs. Fink a poor prognosis of "intractable epilepsy" and breakthrough seizures uncontrolled by medication. (R. 230). The ALJ discredited Dr. Azizi's findings as unsupported by the medical evidence of record. (R. 19). Neither the Commissioner nor ALJ is bound by any physician's assessment if: (1) contrary medical evidence exists, see Frankenfield v. Bowen, 861 F.2d 405, 408 (3d Cir. 1988); or (2) insufficient clinical data supports it. See Newhouse v. Heckler, 753 F.2d 283, 286 (3d Cir. 1985). The ALJ explained his rejection of Dr. Azizi's opinion as follows:

> As for the opinion evidence, Dr. Azizi stated after one visit in September 2005 that [Plaintiff] was unable to work (Exhibit 7F). In March 2006, he stated that her "intractable" seizures precluded working (Exhibit 10F). Nevertheless, I cannot ascertain the precise medical reason for his opinion, either in his own brief notes or in the medical record as a whole. He has not offered clinical observations, sleep electroencephalogram studies, periodic medication checks to establish metabolic problems (versus noncompliance), or any other objective basis for proving that [Plaintiff] has seizures of an established frequency and type that cannot be controlled. Thus, I will not give his opinion much weight (20 CFR §§ 404.1565 and 416.965). (R. 19).

---

[12]These findings of disability are not controlling in any case; the finding of whether a Plaintiff is disabled is reserved to the Commissioner. *See* SSR 96-5p. Nevertheless, the ALJ cannot ignore these findings w ithout articulating valid reasons. *Id*.

The ALJ appropriately limited his reliance upon Dr. Azizi's opinion. Objective evidence was absent in the record, therefore substantial evidence supports the decision to reject Dr. Azizi's ultimate disability opinion. See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)). ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence."); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) (stating that an ALJ must provide "not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence that was rejected"). The ALJ adequately explained his analysis of the evidence and his rejection of Dr. Azizi's opinion is supported.

The ALJ did assign probative weight to the February 14, 2006 state agency assessment completed by Mr. Robert Snyder. This lay examiner, on behalf of the state agency, found that Mrs. Fink did not meet a listing, and could work. (R. 201-03). Prior to completing his assessment, Mr. Snyder contacted Dr. Patterson to request that Dr. Patterson review Mrs. Fink's file.  Dr. Patterson agreed that Mrs. Fink did not meet a listing and reported that her seizure impairment resulted in only minimal restrictions. (R. 134). Thus, Mr. Snyder's lay assessment, which was assigned probative weight by the ALJ, relied upon and was consistent with the finding of a medical doctor, Dr. Patterson.

Notably, sparse and sporadic treatment notes from 1996 through 2007 lack the support of objective tests. Adequate objective medical evidence confirms that Mrs. Fink

13

suffers from epilepsy, (R. 134-55, 183, 185-90, 192-204, 225-30), and takes Depakote and Tegretol to treat her seizures. (R. 140-55, 185-89). An October 20, 2005 EEG Report, the only EEG report obtained during the relevant period, revealed an abnormality that possibly is "a partial or localization mechanism, a primary generalized mechanism with an unusual appearance, or more than one contributing factor for [Plaintiff's] seizures." (R. 186-87). Mrs. Fink relies upon this report as evidence of objective medical testing that shows metabolic problems which cause her petit mal seizures. Pl. Br. at 13.

However, the EEG report neither addresses nor establishes that Mrs. Fink is disabled. Likewise, Dr. Azizi's medical reports do not indicate objective proof beyond this EEG that she is disabled. *See* (R. 225-30). This court is reluctant to find one test to be sufficient clinical data to support a disability opinion. Dr. Azizi's treatment notes reflect only two office visits with Mrs. Fink, *see* (R. 185, 188-89, 2004), despite his March 2006 letter indicating a disability finding. (R. 204). Medication levels could confirm compliance and un-controllability of the seizure levels. In his decision, the ALJ specifically noted Mrs. Fink's testimony that she had not been examined by Dr. Azizi since November 2006. (R. 18) (citing (R. 251)). The Commissioner's regulations explicitly permit an ALJ to consider, as the ALJ did in this case, the frequency with which a treating source sees a claimant when determining the weight to be afforded the treating source's medical opinions. *See* 20 C.F.R. § 416.927(d)(2)(I). The lack of objective medical testing to support Dr. Azizi's findings along with his sparse treatment and

14

records constitutes substantial evidence to support the ALJ's decision to reject Dr. Azizi's disabling opinion.

**3. The ALJ Properly Assessed Mrs. Fink's Testimony**

Mrs. Fink argues that the ALJ failed properly to assess her credibility. Pl.'s Br. at 22-23. The Commissioner contends that the ALJ's treatment of her credibility was correct. Def. Br. at 8-10.

In this Circuit, the ALJ's credibility findings "must be accepted unless they are without basis in the record." Kliesh v. Chater, No. CIV. A. 95-213, 1996 WL 39438, *2 (E.D. Pa. Jan. 31, 1996) (citing Gober v. Mathews, 574 F.2d 772, 777 (3d Cir. 1978); Torres v. Harris, 494 F.Supp. 297, 301 (E.D. Pa. July 29, 1980), aff'd, 659 F.2d 1071 (3d Cir. 1981)). Other districts have held that an ALJ's credibility assessment will not be overturned unless it is "patently wrong." Peterson v. Massanari, No. 99 C 6026, 2001 WL 831318, *9 (N.D.Ill. July 24, 2001) (citing Zurawski v. Halter, 245 F.3d 881 (7th Cir. 2001)). Ordinarily, a reviewing court defers to the ALJ's credibility determination, because he or she has had the opportunity during a hearing to assess the witnesses' demeanor. See Reefer v. Barnhart, 326 F.3d 376, 380 (3d Cir. 2003). The ALJ must indicate what evidence he is rejecting and provide valid reasons for discounting that evidence. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (citing Burnett, 220 F.3d at 121).

Mrs. Fink alleges that the ALJ improperly discredited her testimony inasmuch as

15

Dr. Azizi's reports provide medical support to substantiate the frequency of her seizures. Pl.'s Br. at 22-23. Mrs. Fink and her husband provided extensive testimony and evidence regarding her seizures including Mr. Fink's seizure frequency log. (R. 247-56). However, the ALJ found the log to be unsupported by both the medical record and the Finks' testimony. Specifically, the ALJ noted that:

> [Plaintiff's] spouse testified that he created the seizure log in Exhibit 7E that covers about 8 ½ months from September 2006 to May 11, 2007. This reflects 46 seizures (5 grand mal and 41 petit mal) or about 5-6 seizures per month. As her family insists [Plaintiff] does not remember her seizures, this exhibit represents the uncorroborated statement of her husband as to seizure frequency and type. It also conflicts with Exhibit 4E and their own testimony. She testified that she daily loses periods of time, presumably due to absence seizures.  He testified that [Plaintiff] has daily petit mal spells plus some grand mal seizures. The log does not support this. (R. 18).

This assessment is proper and will not be the basis for a remand. Medical evidence does not buttress Mrs. Fink's account regarding the frequency of her seizures, *see supra* Section IV.C.(1), (2); thus, the court finds the ALJ's finding explained.

Mrs. Fink next argues that the ALJ improperly relied upon her "spotty work history" as the basis to discredit her testimony. Pl. Br. at 22. The ALJ found that:

> [Plaintiff] has a spotty work history, and I did not find her testimony or that of her husband to be fully credible in light of the lack of objective support since July 2005 (and essentially no support since November 2005). After considering the evidence of record, I find that the [Plaintiff's] medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
> (R. 19).

First, the ALJ's mention of Mrs. Fink's work history was proper. In accordance to 20 C.F.R. §§ 404.1529(c); 404.1512(b)(3), all evidence of record, including her work efforts, should be considered by the ALJ in determining credibility. Second, the ALJ determined that Mrs. Fink's testimony was inconsistent with the medical evidence. The ALJ articulated valid reasons for limiting Mrs. Fink's credibility, hence, this court will not disturb his finding. See Fargnoli, 247 F.3d at 43 (citing Burnett, 220 F.3d at 121.)

**4. The ALJ Properly Found Mrs. Fink Could Perform Her Past Relevant Work**

Mrs. Fink argues that the ALJ improperly determined that she could perform her past work as a lead cashier as she had previously performed. Pl. Br. at 18. The Commissioner argues that because Mrs. Fink's past relevant work as a cashier did not involve duties restricted by her RFC, as she reported and as testified by the VE, the ALJ correctly found she could perform her past work as a cashier. *Def. Br.* at 8. The Commissioner's assertion is correct.

Mrs. Fink indicated, in her Disability Report, that her prior position as a cashier at CompUSA, as she performed it, required her to walk/stand for 7.5 hours a day, sit for half an hour a day, write, type or handle small objects for 1.5 hours a day, occasionally lift 20 pounds, frequently lift less than 10 pounds, supervise an employee and a cash register, serve as a lead cashier, assist customers, stock registers and answer the phone. (R. 77-78). The VE found that Mrs. Fink would be precluded from "working on the floor" as a cashier due to her seizure disorder and that her position, as described in her Disability

Report, was not typical of other cashier positions at CompUSA. (R. 258). Yet the VE testified that Mrs. Fink could perform her past relevant work as a cashier at least as generally performed. (R. at 258). The VE was asked "So cashier work, as <u>she</u> would generally perform as described in the DOT, would be inconsistent with seizure precautions?" The VE responded, "It would. I don't see anything to preclude that." <u>Id.</u> (emphasis added). The question and response show that both general and actual performance is being discussed. The VE testified that Mrs. Fink could perform a cashier position, as it is *generally performed* according to the DOT, despite her seizure disorder and need to refrain height and vibration hazards. (R. 257-58). On this record, the ALJ was justified in finding that Mrs. Fink could perform her job both as generally <u>and</u> actually performed.

> After eliciting VE testimony, the ALJ found that:
>
> In comparing [Plaintiff's] residual functional capacity with the physical and mental demands of this work, I find that [Plaintiff] is able to perform it as actually performed. I see no undue job hazards that would disqualify [Plaintiff] for these positions as a cashier.
> (R. 20).

However, whether or not Mrs. Fink can perform her former job as actually performed, she is not disabled because she can perform her former job as generally performed. In other words, even if Mrs. Fink could not perform the demands of her former job, but "can perform the functional demands and job duties as generally required by employers throughout the economy" she should be found not disabled. <u>Soc. Sec.</u>

Ruling 82-61.  The evidence in the record overwhelmingly supports the ALJ's finding that Mrs. Fink could perform her cashier position as she actually performed it and as generally performed.[13]

**V. CONCLUSION**

After a thorough review of the record, this court finds that substantial evidence supports the Commissioner's determination that Dorothy Anna Fink is not disabled. Accordingly, the Commissioner's decision is **AFFIRMED**.  An appropriate order follows.

---

[13] In her reply to the defendant's objections to the magistrate judge's report and recommendation (Document #16), Mrs. Fink construes the VE's testimony as suggesting that she could not perform her former because she formerly was a "lead cashier," as opposed to a "cashier" and that it does not matter that she can perform generally as a cashier.  This characterization of the testimony does not appear to be accurate because the VE testified that *at least* Mrs. Fink could generally perform cashier work as described in the DOT and that, although she may be precluded from working "on the floor," CompUSA has "more delineated" roles so that "cashiers tend to be cashier."  The VE used Mrs. Fink's former workplace (the place where she actually performed her cashier duties) as an example of a workplace where the cashier job would be limited to cashier duties and resemble the cashier job as generally performed: "at CompUSA. . . . She's most likely not on the floor, helping customers but she's ringing up."  (R. 257-58).  In any case, there is more than sufficient evidence here to support the ALJ's findings.

19

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOROTHY ANNA FINK,** | : | CIVIL ACTION |
| **Plaintiff** | : | |
| | : | |
| v. | : | NO. 08-1330 |
| | : | |
| **MICHAEL J. ASTRUE,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant** | : | |

**O R D E R**

**AND NOW**, this 30th day of March, 2009, upon consideration of the Report and Recommendation of United States Magistrate Carol Sandra Moore Wells (Document #14), Defendant's objection thereto (Document #15) and plaintiff's response (Document #16), it is hereby **ORDERED** that:

(1) The Report and Recommendation (Document #14) is **DISAPPROVED in part and APPROVED and ADOPTED in part**;

(2) Defendant's objections to the Report and Recommendation (Document #15) are **SUSTAINED**; and

(3) the Commissioner's decision is **AFFIRMED**.

BY THE COURT:


  /s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.